We'll hear argument first this morning in Case 22-10-08, Corner Post v. Bd. of Governors, FRS Mr. Weir? Mr. Chief Justice, and may it please the Court, Corner Post opened for business in 2018. Since then, it's paid several hundred thousand dollars in debit card fees that it thinks are unlawful. But the government says that Corner Post's clock to challenge those fees actually started in 2011, seven years before Corner Post pumped a single gallon of gas. The government is wrong. Corner Post's clock started when it swiped its first debit card and paid its first fee. That is the right outcome here for three main reasons. First, and most importantly, the text. Section 2401's limitations period starts when a claim, quote, first accrues. This Court has said that phrase means the clock starts only once a plaintiff can sue. And this Court has also said that an APA plaintiff can sue only once it's first harmed by regulation. We just want the Court to apply those settled principles. By contrast, the government wants a special rule that contradicts how accrual statutes have worked since at least the 1830s. That government-only carve-out would convert Section 2401 into a repose-based statute like the Hobbs Act. But Congress knows exactly how to craft repose-based statutes when it wants to, and it hasn't done so for APA claims. Second, with no textual foothold, the government resorts to policy arguments. It says that siding with Corner Post will undermine reliance interests because it will let plaintiffs challenge rules that are older than six years. But challenges to those rules already happen all the time in the as-applied context, and the government admits that as-applied challenges have no time limit. Third, if Congress's textual choice leads to outcomes that the government doesn't like, this Court has said that those concerns should be addressed to Congress, not to this Court. This Court's role is simply to enforce the value judgments that Congress has already made. We ask that it do so here. I welcome the Court's questions. Do you have any examples of accrual cases or questions where the injury and the unlawful conduct are on different dates? Well, that's really any typical accrual statute. For example, there are torts where a tort is committed and the cause of action is not complete until later, until the harm is felt. So that's a basic. We think there's nothing remarkable about that fact pattern. Well, but how many cases are like yours where the regulation has been adopted, it's final, and you are not yet in business, so it can't apply to you? So are there any cases like yours where the injury is later? Certainly there are repose-based statutes that would cut off review for someone like us, but the APA is the background rule. So do you have any other cases like yours? So the question being, are there any other accrual-based statutes for agencies specific? Where the injury occurs long after the rule is adopted. So there's the Hur case in the Sixth Circuit, which starts the circuit split in this context. That's one case where it happened. But I think the question, unless I'm misunderstanding it, Justice Thomas, is are there any other statutes of limitations that operate the way we say that? Yes. So we think that's what we're not aware of. You see, I'm more interested in the fact pattern that we have here. Your business, you have a rule that's adopted. It's final. It's been challenged. Then you go into business. You begin to operate under these rules, and you claim, of course, that's the beginning of your injury. And then, of course, you say that restarts the statute of limitations. That's what I'm interested in. So in the regulatory context? Yes. So in the regulatory context, as far as we know, the 2401 is the only rule that applies that way. Okay. So if that's the case, do you have an example that is similar to yours? I think the Hur family. So that's the only one? Well, the lower courts have rejected our reading of 2401, and so there wouldn't be other cases because they would have been time-barred under that rule. Counsel, there is something about this that plagues the back of my mind, which is how can someone be injured who goes into a business knowing its structure, meaning this is the business that you've accepted. The rule was passed whatever number of years ago. There's no enforcement against you. I understand injury when the government is seeking to compel you to do something or to stop doing something, but there's no injury in my mind when you enter a business knowing its structure and accepting rules that have been final. So explain to me what makes sense in, I mean, this has often been called the facial challenge as opposed to an as-applied challenge, and I think that's for valid reasons, which is if you go in, you accept the regulatory conditions of the business, and you're not burdened because you knew it going in. Well, I think that assumes that small business owners understand the entire regulatory regime that they're entering before they actually go into business, and I think this Court has recognized that that is a tall task to ask of any small business owner like Corner Post. But the first time Corner Post was ever actually injured is the time that they did pay the actual debit card fees that they had to pay whenever they swiped a debit card. So that's the first time there is any injury. And so accrual-based statutes, this Court has, I think, recognized throughout history, are necessarily plaintiff-specific, and that's exactly what we have here. The first time the plaintiff here was harmed is when that plaintiff's cause of action accrues to challenge that particular rule. But I think what Justice Thomas's question suggested is that this is a context in which this would be a quite novel rule. There are no other statutes of limitations that work this way, and with respect to this statute of limitations, the consensus view of all the circuits until the Hurricane case came along, which was fairly recently in a little bit different context, but the consensus view of all the circuits was that the statute of limitations began to run when you had final agency action. Of course, what typically would happen in a rule like this is that there would be that final agency action. Many people would challenge the rule. Trade associations of the same kind that are in back of this case, that that challenge would go forward. You would get a decision. It would be final. It would create the legal background rules, sometimes for an entire industry, and that was the end of the matter. And what you're suggesting is a very different rule than the administrative sphere has worked under for many, many years. So we don't think so. I think that the 29 examples that the government points out in this brief of agency-specific repose-based statutes shows that Congress intended to have a different rule for the APA. Well, it doesn't show that. I mean, the APA, you're right, it's different language. It says accrues. Now, you know, accrues just means arises. There's nothing in the language itself that would suggest that your principle is mandated. We do, you're quite right, have a general principle that when we see something that says accrues, what that usually means is that there's a full cause of action that can be brought. But this is a very different context in which the rule has operated differently for decades and decades and decades, where no court has ever suggested your solution until, again, their case. And I guess I would suggest there's nothing in the word accrues that suggests that every court for decades and decades and decades has been wrong. So two responses, Justice Kagan. The first is if you look at those lower court decisions applying this statutory scheme, not a single one of them actually looked at the text of 2401 or 702. None of them did. And then the path-marking decision... But what I'm suggesting, Mr. Weir, is that there's not much in the text to look at. Accrues just means arises. Now, we do have precedent, but that precedent arose in a very different context as to what accrues meant. So you wouldn't find a lot looking at this text. So I disagree with that as well. I think this court definitively interpreted the phrase first accrues in Gabelli v. SEC just 11 years ago. And it said, in common parlance, a right first accrues when it comes into existence. And that was in the administrative document. We made very clear that that was a default rule, a general rule, that could be, of course, countermanded by Congress, but that also could be countermanded by different circumstances. And if you look at the Crown Coat opinion, for example, there's a very explicit recognition by this court, and I'm just reading, the hazards inherent in attempting to define for all purposes when a cause of action first accrues, what are those hazards? You know, a word like that should be interpreted in the light of the general purposes of the statute with due regard to those practical ends which are to be served by any limitation of the time within which an action may be brought. And you couldn't find better language to point to this is a really different context with really different interests, including reliance interests of many, many parties that were not before the court. And courts have responded to that and created a different rule which has lasted... I mean, this is kind of a revolutionary ask. So we disagree on Crown Coat. The top line holding from Crown Coat, as we read it, is that Congress would not want under 2401 the statute of limitations to start running until the plaintiff had the opportunity to sue. And that language that you just quoted that the government relies on, we see that as a recognition that obviously the underlying cause of action differs between causes of action. Torts accrue at different times in breaches of contract. Different torts can accrue at different times. And so we just see that language as just recognizing that. And as far as the purposes of the statute, this Court said in Abbott Labs, the purpose of the APA, it embodies a presumption of judicial review. So if we're going to look at the underlying statute and its purposes, I think that cuts our way, not the government's way. Mr. Ware, I thought that we had sort of basic first principles governing statutes of limitations. And it sort of goes to what Justice Kagan pointed out. But I thought that we ordinarily say that a cause of action arises, which is accrues, it arises when all of the facts that are necessary to establish the elements of that cause of action have occurred. You know, in a tort situation, when there's a duty, if there's a breach and injury as a result of the breach, those facts have occurred, the cause of action has arisen. And we say the clock starts running at that point because a claim against the defendant can be sustained in court when those facts exist. All right, so if that's right as a first principle, I guess I don't understand your argument that the cause of action is arising here when the plaintiff can bring the claim. I think the law regarding when a plaintiff can bring a claim is something different. But we have here a cause of action arising out of the final agency action because that is the point at which a person can sustain a claim against the agency under the APA. Why am I wrong about that? So this Court has identified the elements of an APA claim that requires a plaintiff who was injured and injured by agency action. So those are the elements. Where have we said that that was an element? I thought that was just a statement of the statute as to who can bring the claim, not like the element of the claim when has the defendant violated the law. So I would point the Court to the Lujan decision, 1990, where it outlines the elements of an APA claim. The Court dealt with it there. But you can look at the statute itself. Section 702 identifies who? A person. That's who has the cause of action, a person. Right, who has the cause of action. I'm talking about what are the elements of the cause of action, and I thought it was the agency has enacted a final rule that you claim is arbitrary and capricious or not in accordance with the law. Once the agency has done that, we have a cause of action. It has arisen, and then these other elements or these other aspects of the statute say who is the person who can bring such a claim. So I disagree with that. This Court has said that certainly final agency action is an element of an APA claim, but the other element, as this Court noted in Lujan and I think in Newport News, is somebody who's actually harmed by it, a plaintiff who was harmed by it. And accrual-based statutes are necessarily plaintiff-specific. That's their DNA. We're not aware of a statute that uses accrual language or accrual-like language where the statute of limitations starts on the first day and ends on the first day for everyone, and we think that's because that's not an accrual statute. That's a statute of repose, and Congress certainly knows how to pass those, and Congress knew how to pass those when it passed the APA. In 1934, Congress passed a sort of Hobbs-like statute for the SEC. It did so in 1938 for the FTC, and in 1950 it actually passed the Hobbs Act. Between those bookends, it passed the APA, did not subject the APA to a repose-based statute of limitations, and it passed 2401, two years later. So we think that necessarily must be an intentional choice that APA claims are not subject to the type of repose as other types of cause of action. Well, but repose is a little bit different in this context. I mean, you're talking about sort of establishing the ground rules for how a particular regulatory regime is going to operate, and, you know, you've got six years to do that, and, you know, you often see trade and other associations bringing fundamental challenges to the, you know, structure of the market or the agency, and under your system, those sort of challenges to how everything is structured could be brought 10 years later, 20 years later, and it seems to me that you sort of have to create the universe, you know, repeatedly as opposed to just taking those are the ground rules and here's how they're going to work. So we think challenges to regulations like that are happening already in the as-applied context. You can always have an as-applied challenge. Those happen to broad sets of regulations already, and so we don't see that really as an issue, and I just want to be clear, there's no incentive to challenge valid regulations or anything like that. We're talking about challenges only to regulations that presumably have some defects, and those are exactly the type of challenges that Congress would want people to bring. That's why it passed the APA. How does, like, stare decisis and rules like that, how do they work under this regime? You have, you know, presumably fundamental challenges, the new regulatory regime, and it starts up and they get decisions, and maybe they, you know, force the agency to change things, and then every time somebody brings a new facial challenge, they basically have to litigate that same question over again. So I'm not sure stare decisis would apply unless it was an interpretation of this court, of course, but in the lower courts... Or this agency, whatever they call agency common law. You know, I think anybody that was bringing a subsequent lawsuit, of course they have to run up against the fact that there's apparently, you know, a well-reasoned decision that's already ruled against them, so there's an uphill climb to start with, I think. But that is what's commanded by, we think that's what's commanded by the text of 2401 in the APA, and we want to be clear, even for people that have valid... There's no res judicata or collateral estoppel, correct? I'm sorry, Your Honor? There's no res judicata or collateral estoppel. Well, the government has argued in the district court below here that there are res judicata principles at play, and so if we prevail on remand, they're welcome to raise those or any other equitable... Is that your... I'm sorry. No, please. Is that your answer to the list of examples on page 39 of the government's brief of all the... I want to... I don't want to dismiss it because I'm not. There's a whole list, a parade of horribles that I see as potentially true, that the government lists at page 39. And your response has been, don't worry about it, it's not going to happen. But tell me why they aren't real possibilities. Tell me what guardrails there are in the law that would prevent those kinds of challenges, the ones that the chief said 10, 20, 30, 40 years ago. What stops those from reoccurring constantly? So we think there's a number of things that do. First, there are many defenses the government can raise to what some call manufactured plaintiffs that are creating an injury to challenge regulations. We outline those in our blue brief. We don't see the government as contesting those. But even if... That's very hard to prove. So it's the government's own position at the third stage that parties like Corner Post, who are harmed for the first time more than six years after regulation is issued, are relatively uncommon. That's the government's position. And we think there's a reason why. Vast swaths of the regulatory state are already carved out by repose-based statutes, such as the 29 that the government cites. So those wouldn't even be subject to this court's decision here. They're already time-barred. They're out. But even what's left for the APA, for APA claims, the vast majority of the country is already time-barred from bringing challenges to old regulations under the APA. The only ones that have the ability to bring those challenges are those who are harmed for the first time in the last six years. So this court... That doesn't seem very hard. I mean, you can always find a new company, a new regulated entity. You can create a new company or a new regulated entity. If the same trade association that has had its first bite at the apple doesn't like the answer ten years later and looks around and thinks, you know, the environment is more hospitable, the judges have changed, let's try again. Just create a new entity. Well, I think just creating a new entity won't get you there. But I think, to get to the heart of your point, if that were true, we would have seen that in the Sixth Circuit. We would have seen sophisticated litigants bringing challenges to old regulations in the Sixth Circuit, and it just didn't happen. There was no uptick to old regulations. Counselor, if I understand your point, and I just want to make sure I do, we're talking about a facial challenge here. If there were circuit precedent that would bar you, as a matter of story decisis, that would be a winner on the merits. You lose. You have a timely claim, but you lose. Is that right? That's correct. And the government may be able to use non-mutual collateral estoppel or some other res judicata principle to say the matter is decided effectively against you anyway. Right? That's correct. So we're just talking about the timing of the suit. And then you mentioned that nobody contests that as-applied challenges could go forward. But how could that be? I mean, if you lose, why wouldn't as-applied challenges also be barred? Because they, too, accrued. Back when the accrual rule turns on the adoption of the rule, that would seem to bar all future claims, whether as-applied or facial. Well, certainly that's possible. The lower court precedent now, I'm not sure this Court has directly addressed it. I understand the lower court precedent has distinguished between the two, but they haven't discussed what accrual means and how that word might be a chameleon and differ between as-applied and facial challenges. And if you were to lose and we were to hold accrual means the time of the adoption of the rule, it would seem to upset and undermine all of those decisions, too. I think I agree with that. Mr. Merrifield, what does that say? Sorry, I just have one more question. And this is the last sentence of 702, which the government draws our attention to. And it says that nothing here affects other limitations on judicial review, and I didn't see your response to that argument. Do you understand what I'm getting at? I do. Can you give me your thoughts on that? I can. So two responses. First, this Court already dealt with that issue in Darby v. Naros. What happened in 1976 is Congress waived sovereign immunity under 702, and what Congress wanted to do was make clear that that waiver did not affect any other limitation on judicial review that already existed. So it's the waiver of sovereign immunity that's not affecting anything else. But even on its own terms, on the government's own terms, we think that argument doesn't work because all accrual-based statutes necessarily depend on the underlying cause of action, so they work together. So applying 702 in the way we think it should be applied is merely an application of 24-1. So you're saying, in other words, that your view, I just want to make sure I understand, doesn't affect any other limitation. It just interprets the word accrual. That's correct. Is that a fair summary of it? It's an application of an accrual statute. Again, this Court dealt with that in Darby v. Naros. If I could go back, Mr. Weir, to what you suggested about accrual would operate the same way in an action where there was an as-applied defense and an enforcement action. I don't think it could. 24-01A just talks about civil actions commenced against the United States. It has no application to places where there's an enforcement action, and this functions as a defense. So there are different types of context for as-applied. If you are denied a permit, for example, you usually take that to court in federal district court, and you sue the United States. And so on its face, 24-01 would apply in that context. So the distinction there is between an enforcement action against you by the government, in which case you'd have the ability to make your challenges, but if you sought an as-applied challenge affirmatively yourself, you might be barred. I think that's right. I just want to point out, what the government is asking for is several carve-outs. It's asking for a carve-out for how general accrual rules have worked since the 1830s. It's asking for a carve-out for how this court has actually interpreted the phrase first accrues from Gabelli. It's actually asking for a carve-out of how this court has applied 24-01 in the past. We think Crown Court supports us, but the court had applied 24-01's predecessors in the 1900s. The chamber brief outlines several examples where first accrues is applied just how we want. And so what the government is asking for is a special rule just for it, and this court rejected that exact same argument in the Franconia case. What do you do with the word first in the actual statute? You seem to be asking us to read the statute as if it says a complaint is barred from the time in which the plaintiff is first aggrieved, but that's not what it says. So how is it that every new company that is created in the aftermath of the creation of a rule can claim that this is the first time that the cause of action has arisen under the APA? Because under accrual-based statutes, the claim is plaintiff-specific. So if you look at, like, the Hobbs Act, the Hobbs Act... What I'm suggesting is that it's not. Just because it says the cause of action accrues doesn't make it an accrual-based statute in the way that you are interpreting, and I don't understand how it can be when it says first accrues. So the way we interpret first accrues is that the first time you suffer a harm, that is when your statute of limitations starts running. Right, but isn't that reading words into the statute in a way that doesn't make a whole lot of sense? If you're suggesting that this statute is the first time anybody is harmed by the United States, they have six years, anybody, for any reason. That's how 2401 reads and is applied. And to be clear, it applies to not just APA claims. It applies to FOIA actions. It applies to government decisions that are not covered by Title VII, and the government's rule doesn't make sense in those contexts. You can imagine an agency that had an unlawful employment policy, and under the government's rule, the first employee that was harmed by that policy, that would start the statute of limitations for everybody at the same time. Thank you, counsel. Justice Thomas? Justice Alito? The government says that late-arising objectors like corner posts can get relief by petitioning for new rulemaking. Why isn't that sufficient for you? We don't think that's a viable path to judicial review for a couple of reasons. First, the government gets to decide when it rules on a petition for rulemaking, and it can sit on it for years. But even the government acknowledged, I think, in PDR Network, that this is not a guaranteed path to judicial review. Typically, a denial of a petition for rulemaking gets very deferential review. That doesn't allow the plaintiff to actually get at the merits of the underlying regulation they're trying to challenge. And we know what would have happened in this case if we filed a petition for review. The board itself issued an NPRM after the court granted cert, and it's not going to revisit the part of the rule that we wanted to revisit, and so it wouldn't have mattered even if we did. Thank you. Justice O'Neill? Justice King? Justice Gorsuch? Justice Kavanaugh? Just so I'm clear on Justice Gorsuch's questions, in an as-applied enforcement action against you, I think you and the government agree that you can always raise a legal challenge to the rule or the regulation. That's correct. That's how the courts have interpreted it. Okay. Second question. This is looking down the road, and it's really a tangential issue, but it interests me. So what relief can you get here if you can't get vacator of the rule? If we can't get vacator? We can't imagine a situation where our client can get relief from this rule absent vacator, but that's not true in most cases. In most cases, directly regulated parties can. But on the vacator issue, which is always working, a party who's not regulated would be able to get no relief in a situation like this. I think it would depend on the context. I think you just said that. There are some instances where you might be able to do it, but not in this case. Thank you. Justice Barrett? I have one question, and it's about your point about procedural challenges not being the kind of challenges that you could bring, and you say, I think, that that's part of the explanation for why the government's parade of horribles on page 39 of its brief is not so horrible. The procedural challenges are out. That's what we think is the best reading of how injury occurs in that context. The court doesn't need to reach it in this case because we don't have procedural challenges. So are arbitrary and capricious challenges procedural or not? Those are substantive. So those would be substantive in your view. That's correct, and you can raise those as applied enforcement context as well. Thank you. Justice Jackson? So can I just be clear? You're saying that injury is an element of an APA claim. It is. Okay. And can I also be clear on the consequences of your decision? Because I guess I worry that if you win, every agency rule in existence today would be subject to some sort of a challenge in this way. So I'm trying to understand that argument. Sure. So I think, first, many of those regulations are already subject to challenge in the as-applied context, as I've already said. But we don't think that there's going to be any opening the floodgates or parade of horribles because even the government said that parties that can bring this type of claim are relatively uncommon. And we think that's because most parties are harmed the day a regulation is actually issued. And I think you also have vast – Why wouldn't this be extraordinarily destabilizing in the way that Justice Sotomayor suggested? I mean, we have settled rules that govern all sorts of industries, the healthcare industry, the finance industry, and people have adjusted themselves around them. They're experts who understand how the law works and companies follow suit. If I understand you correctly, each new company that is created in an industry can suddenly bring a challenge that might risk or undermine invalidation of the entire basis of the industry. Each new company. Because you say each new company that's created can bring such a lawsuit. Now, whether or not it will succeed, I understand. But aren't you risking destabilization of the industry in this way? We don't think so. We think the experience in the Sixth Circuit is what you'll see. There was no uptick in challenges to old regulations in the Sixth Circuit. We would have seen them there. Is that possible because we had other doctrines that prevented? So, you know, for example, Chevron existed and so there were lots of things that already, you know, right? Like, there are reasons why you might not have an uptick. I'm just wondering, in a world in which you could bring these actions, why wouldn't you have this problem? Well, I think that because most regulations are valid. There's no argument that they're unlawful, so you wouldn't see them. It's only the ones that have defects that you're going to see challenges to or potential defects. And going back to Justice Thomas' question, we had already had a challenge on this very set of regulations. So why is that not enough to satisfy this scenario? Because our client was first injured by that same rule and has its own challenge to being under the APA. The American tradition is everyone gets their day in court, and then the APA itself provides for presumption of judicial review. Thank you. Thank you, Counsel. Mr. Snyder?  For decades, the courts of appeals have consistently recognized that the six-year statute of limitations on an APA claim accrues at the time of the challenge to agency action, not the time when a particular plaintiff comes within the relevant statute's zone of interest. In asking this court to reject that settled practice, Corner Post argues that the word accrues in Section 2401A invariably refers to the time at which a specific plaintiff obtains a complete and present cause of action, and that every newly formed entity therefore has six years to challenge any prior agency actions that affect its business or other interests, even if those actions occurred decades ago. Nothing in the APA or Section 2401A requires that destabilizing result. In Crown Coat Front Company, this court explicitly rejected Corner Post's one-size-fits-all definition of accrues, warning of the hazards of attempting to devise a single accrual rule for all purposes. Instead, the court exclaims that to apply the general word accrues, a court has to consider the particular type of claimant issue and how the practical purposes of a statute of limitations apply in that context. In conducting that necessary analysis, courts should give primary weight to evidence about the accrual rule that Congress itself has adopted when it has specifically focused on other claims of the same type. Doing so ensures that courts are not just engaged in their own policy balancing about their respective costs of review and repose, but instead are faithfully following Congress's lead. Here, Congress's standard practice when it's focused on a time for challenging agency action has been to run the limitations period for that type of claim from the date of the agency action at issue. It would therefore reasonably have expected courts to follow the same approach when applying Section 2401A's catch-all statute of limitations to claims under the APA. And because that's what the Court of Appeals did here, the decision below should be affirmed. I welcome the Court's questions. So when did the claim accrue for this petition? So this Court has said that a claim can accrue for different purposes or can accrue for purposes of the statute of limitations at a point that's different from the point at which the plaintiff can bring suit. And so Corner Post could not have sued until some point after it was incorporated. It's not exactly clear when, but when it had formed an intent to accept debit cards. But for statute of limitations purposes, its claim accrued at the time the regulation was adopted in 2011. Is that normal to have two different times? So in the context of administrative law challenges to agency action, that's absolutely the standard rule. My friend acknowledged that he can't point to another statute that doesn't treat accrual that way. In other contexts, in the contract context or the tort context, it's true that that sort of rule is unusual. But in the context of administrative law challenges, it's entirely typical, and it would be strange to say that the rule should apply at some other time here. So I think I must be missing something fundamental. You have an individual or an entity that is harmed by something the government is doing, and you're saying, well, that's just too bad, you can't do anything about it, because other people had six years to do something about it, and maybe another person, a business organization or whatever, did do something about it. I mean, your friend on the other side said everybody is entitled to their day in court, and it doesn't say unless somebody else had a day in court, or unless the government gave other people, anybody, six years, but you weren't injured in six years, you were injured in seven years. I guess I must be missing something, because I don't understand why this wasn't settled 60 years ago. It seems pretty fundamental. So, Mr. Chief Justice, I understand that intuition, but I think the available evidence shows that Congress doesn't share it. I mean, my friend pointed out that we've identified 29 other limitations periods on challenges that are substantively the same as his. Okay, yeah, Congress doesn't share it, but I mean, it's not exactly an uninterested party. It has set up an agency, and they just assume it not be challenged. We don't say when there's a legal challenge to something else that Congress is happy with it, so go home. So, Mr. Chief Justice, I don't think there's any dispute that Congress can say that facial challenges are not available after a certain point. My friend is not here suggesting that the Hobbs Act or the dozens of other special statutory review provisions that we've pointed to are unconstitutional. And there are, in the APA context, other ways in which parties can raise challenges to agency action. Like what? Like what one is going to help corner post. I mean, they're not injured by direct enforcement of the regulation, so don't tell me, well, they can object to enforcement. What else is there? So the other option is that they can petition for rulemaking. That's something that Congress set out in Section 553E of the APA itself. In 555E, it required the agency to respond in a reasonable time. Well, but maybe they don't want to rule. They want the government to stop what it's doing to them. Well, I mean, we were talking in this case about corner post interests. I think it's relevant that corner post is not relevant, or excuse me, is not regulated. And so it's true that corner post can't assert these types of claims in an enforcement action. But that's because this rule doesn't apply to corner post. But you don't doubt that it has standing, right? No, we don't doubt that it has standing. And so it could have brought a suit within six years after the regulation was adopted. Well, but they weren't in existence six years after the regulation was adopted. So that's true. It's also true in the Hobbs Act context. It's true in dozens of other contexts. A whole bunch of things are illegal. I don't think anyone has suggested that those are illegal. Except for the Chief Justice of the United States. With that caveat. Let me put it this way. I don't think the entity with the strongest interest in making that kind of argument has made any serious suggestion that the Hobbs Act is unconstitutional or that those other special statutory review provisions are unconstitutional. I didn't mean to suggest it either. But you do have a specific injury inflicted by the government. The individual has standing. And your argument is, well, Congress doesn't want people to sue. Or somebody else had the chance to sue. And you could have joined that trade association. Mr. Chief Justice, I do want to push back a little bit on the idea that this injury is inflicted by the government. I think the reason that they cannot assert this claim in an enforcement proceeding is because the government is not applying this regulation to them directly. What their argument is, is that the government should be regulating someone else more aggressively. And so in that context, it's true that they have fewer rights to judicial process when what they want is for the government to go and regulate someone else. If they were the one regulated, they would have additional rights. And that's true in the context of dozens of other special statutory. You mentioned the enforcement action possibility, but why would banks challenge this rule? They benefit from it. So that avenue doesn't seem to be very helpful to you. So, I mean, I think the banks probably think the rule should be higher. Right. Right. If anything, they want more money. I do want to get to my friend's suggestion that the board has been unresponsive to petitions for rulemaking. Well, no, that wasn't my question. And just to pick up on the chief justices, I can certainly understand Congress might want to pass statutes of repose with respect to rulemaking in a variety of contexts, as it did before the APA and it did after the APA with respect to specific statutory schemes. But the APA was passed 80 years ago as the background rule, the kind of minimum, the floor. And it was with a presumption of judicial review. And it uses the word accrue, which had a lot of encrusted meaning. And we have a lot of precedent about it that suggests, yes, an injury, that's when it starts. Okay. But is that so? Why wouldn't it be also perfectly rational for Congress to have adopted as the background rule, the norm, the traditional common law rule? So, Justice Gorsuch, I disagree that that's the traditional rule in this context, both before and after the adoption of the APA. I'm talking about the word accrue. And that's what I'm talking about, too. In Redding Company, this court adopted an interpretation of the word accrues, in which the statute of limitations started to run before the plaintiff could recover on the claim. And then in Crown Coat Front Company, the court pointing back to — Certainly, there are statutes where that's done. And, again, I don't dispute that. But the normal rule, and I think you'd have to concede it, is that the plaintiff's injury is the moment of accrual. That's the normal rule. And if we're looking at what the APA was trying to do as a floor, again, I'm not disputing that there are other examples. But why would it be irrational to think that that's what Congress had in mind? That's my question. So, just as a point of clarification, in Redding Company, the statute just used the word accrues. And so it doesn't just have this single meaning. If you could answer my question. So, my friend pointed out that at the time the APA and Section 2401A were adopted, there were other statutes dealing with administrative review provisions. And those statutes ran from the time of agency action. If you look at 21 U.S.C. 371 — Okay, I got it. I got it. And just flipping back to the question that we had earlier with your friend on the other side, if we were to interpret the word accrued to mean the moment of the agency's action, what's the consequence for as-applied challenges? Put aside, again, enforcement, because that's a criminal proceeding or an enforcement proceeding. Here, it's an APA challenge. And there's no distinction in the statutory text between as-applied and facial challenges. And I understand courts of appeals for years have said as-applied challenges may proceed without carefully looking at the word accrue either. So, I think the difference is which action is being challenged. The reason you can raise a challenge in the as-applied context is that the final agency action that you're challenging is the agency action actually applying the regulation. And so, you're bringing your challenge less than six years after the final agency action occurred. But what you can't do is go back and challenge a regulation that was adopted decades ago. Mr. Snyder, may I ask, what is the coverage of this provision? In other words, you've noted that there are many statutes that deal with particular kinds of agency action. So, what's left over other than this regulation? What's the world of things that this decision will matter to? Is it small? Is it medium-sized? Is it large? What's in it? So, I think it is relatively large in the sense that the general APA cause of action applies to a broad range of government claims. I don't know exactly how to quantify that, but I think it is true. What kinds of claims from what kind of agencies? What is not at issue here? I can't give you a precise answer on that. I mean, I can point you to the special statutory review provisions that we've identified in footnote four of our brief. Candidly, we got to a page-long footnote and stopped. So, there are a lot of other special statutory review provisions that all use accrual in exactly the same way. I mean, I think looking at a survey of this court's cases and thinking about how often the court encounters challenges in the context of an APA claim indicates that it's a pretty broad category of cases, but I don't have sort of precise contours I can put out. How much will it matter in the real world? Because when you have a regulation that has some defects, it's probably going to be challenged sooner rather than later by someone. And then if it's held invalid, it usually will get to this court, which will provide a final answer on that question. So, coming in more than six years later is not typically a winning strategy for challenging a rule. So, just kind of real-world implications picking up on Justice Kagan's point. So, I think one of the real-world implications to highlight is that this doesn't just apply in the context of regulations. I mean, their rule would apply in the context of a permit issued to operate a dam. And on their theory, someone who travels out west for the first time to go see the snail darter can say, I've never been here before, I've never been affected by this dam, and so I'm going to mount an APA challenge to that permit that was issued 20 years ago to allow the dam to continue operating. I think that type of application extrapolated across the entire federal government and all of the final agency actions that the government engages in outside of the context of rulemaking, it's pretty hard to overstate the significance of allowing those challenges to be brought more than six years later. And then, thinking about what Congress was getting at here, I'm not sure it was really getting at this issue at all, because six years is an extremely long time to begin with to challenge a regulation. So I don't know that they were thinking about this context. We just have to apply the text as it is. So, Justice Kavanaugh, I think I agree with you in the sense that 2401A is a catch-all statute of limitations. Congress adopted it as a backstop. It erred on the side of caution in setting a lengthy six-year term. But in understanding how to apply that catch-all statute of limitations to particular types of claims, I think the way to show fidelity to Congress's intent and Congress's expectations is to look at how Congress has approached accrual when it's dealt with similar claims of the same type. But Congress could easily, this is an obvious point, but Congress could easily do that across the board for agency actions and certainly would do something shorter than six years if it did, because repose has been thrown around here. Six years doesn't give you much repose to begin with if you're the government, at least unless this Court has ruled on the issue. So, I mean, I think, of course, six years is better than six decades, which, I mean, that's not even a limit on my friend's rule. So I do think that six years meaningfully protects repose interests, and that lengthy term accounts, again, for the fact that this covers a broad range of claims, even outside the administrative law context. I mean, there are any number of other types of claims that are subject to Section 2401A. Okay, one other question. On the petition for rulemaking that you mentioned, would you acknowledge that the standard of judicial review for the denial of that would be not the same as in a direct challenge to the rule? Yes, I think that's right, and that's why... And that's the problem. One would, from my position, would say that's what Congress has chosen, and to say that because Congress has chosen a petition for rulemaking process that is deferential, the court should instead allow challenges to things that happened decades ago, I don't think that really follows. And I do think that this case is a good illustration of the odd fit that this sort of claim is in a context brought a decade after. If you look at the complaint, it's full of references to, you know, cost data from 2013, 2015, 2017, 2019, but all of that data is completely irrelevant. If they're right that they can go forward on a challenge to the rule as it was adopted in 2011, it makes far more sense to handle this kind of challenge in the context of a petition for rulemaking, where the agency can actually take account of experience with the rule and decide what makes sense going forward. Well, that doesn't suggest that the claim would fail on the merits, right? It doesn't go to the issue of accrual. So my point is not that the claim would fail. I mean, they have other arguments about the law. We think that those arguments would fail, too. But my point about the intervening information is that they have thought that information is relevant to showing something about this rule, and yet in the procedural mechanism they're using here, that information is completely irrelevant. That suggests that maybe it's not the right procedural mechanism. When I read your brief in opposition, I came away with the impression that this case would not have a broad practical effect. You say on page 11 that it's a relatively uncommon circumstance for a person who was not injured when the rule was promulgated to become injured at a later date. But then I got a very different message from your brief on the merits when you say that the petitioner's approach to accrual under 2401A would substantially expand the class of potential challengers and thereby increase the burdens on agencies and courts. So what accounts for this different message? So I think it's a difference in the focus. At the cert stage, the point we were making was that we shouldn't take the case because it wasn't a big deal. But after we took it, our point was that there aren't a lot of plaintiffs in petitioner's position as compared to plaintiffs who can bring the challenge. I think that is empirically a correct statement. If you think about this case, for example, the challenge that was brought to Regulation II back in 2011 was brought on behalf of tens of thousands of merchants. My friend is here at this point representing just one plaintiff. So it's true that the numbers are different. But my friend, as he said, is seeking exactly the same relief that those entities sought back in 2011. And so from the government's perspective, allowing this exception, even though it's only going to benefit a relatively small number of plaintiffs, would have really far-reaching effects. 2401 is a very broad statute that applies to every civil action against the United States. And as I understand your argument, you want us to say that the term accrue means something different in different contexts. Have we ever said anything like that? So I think the court said basically that in Crown Coat Front Company interpreting 2401. It said that accrues is a general word, that it's hazardous to try to give it one definition for all purposes, and then instead you have to interpret it in the light of the specific statute at issue. And if I could point you to Section 2401B, which is a provision governing tort claims against the United States, that similarly uses the word accrues. And the court has acknowledged in that context that different claims are subject to different accrual rules. So in United States v. Kubrick, the court said that most tort claims against the United States accrue at the time of injury, but that some accrue at the time the injury is discovered in the context of medical malpractice, for example. So the court has acknowledged that accrues can lead to different accrual rules for different kinds of claims. An argument that Mr. Weir makes is that if this were also destabilizing, as you suggest, we would have seen that already because there can always be enforcement actions in which a party can defend itself by saying that the rule is invalid. So why hasn't that, why is this so much more destabilizing than that sort of regime? Because, first of all, this applies in contexts where there aren't going to be enforcement proceedings. So, for example, the permit context that I mentioned. His rule would apply in that context, and I think that alone would make it pretty destabilizing. But I also think it's just the case that there are far fewer enforcement actions than there are regulated entities. And so allowing every new regulated entity to bring a facial challenge would significantly expand the number of claims that you would see. The other point that my friend has made about why you shouldn't think this is going to lead to bad results is that there's been experience in the Sixth Circuit. Do you want to address that? The Sixth Circuit, courts in the Sixth Circuit have not understood her to adopt the rule that my friend is arguing for. And the best evidence I can give you of that is that a newly incorporated pizzeria filed suit against Regulation II in Kentucky in 2022. And the court applying her said that claim, materially identical to this one, is untimely because her dealt with as-applied challenges as opposed to facial challenges like this one. So there's just nowhere in the country that you can look to see what my friend's rule would look like. And Mr. Schneider, is your rule of accrual completely disaggregated from injury? Because you agree, right, as a matter of the APA in Article III, that a plaintiff can't actually even bring a suit unless the plaintiff has been injured, right? Yes, that's true. I mean, our accrual rule is the same accrual rule that Congress has called for in the context of the Hobbs Act. I know, I know, I know, but we're talking about 2401. And in Crown Point, the entitlement to payment didn't arise until at the point where we said it accrued. So, you know, there's language in Crown Point that helps you. But on the actual facts of the case, that was when the injury was complete. And so, but what I want to know is would this be the only time for purposes of 2401, as opposed to things like the Hobbs Act, where we would have interpreted accrued to be separate from injury? Like, what if the government delayed enforcement and there wasn't an injury yet, for example? So I'm not aware of another case in which this court has interpreted 2401A to sort of go in either direction. I mean, in Crown Codefront Company, the accrual point was both the point of injury and the time of agency action. So we're not suggesting that Crown Codefront Company, by its holding, resolves it between those two. As for a case where there was no, where there was delayed enforcement, I mean, I think the whole idea of pre-enforcement review is that a plaintiff can bring suit, even if they are not yet subject to enforcement actions. And so I don't think that that would prevent someone from bringing a challenge when the regulation was first adopted. But injury isn't part of the calculus. It's really just finality. So, yes, we think that's true for the APA, just as it's true for others. I think it has to be that way because I guess I'm trying to understand when the injury would occur under their theory with respect to the promulgation of the rule, right? I mean, the claim under an APA case in this way is that the rule was promulgated in an invalid way. So I'm trying to understand when the plaintiff would be injured if we're going to go with an injury theory. I don't even know when that would happen, really. Can you speak to that? I mean, I think they would say that they were injured for the first time when they felt the effects of the rule. So I think they would say – But they came into the environment. The rule was already in existence. So I guess it was the day they were incorporated? So they have said it's not the date they were incorporated. They've said it's the day they opened the doors for business. I don't know why, on their understanding of the accrual rule, it wouldn't be the day – But don't we have to pin that down if we're going to go with their rule? I mean, we've got to figure out when the clock starts. I'm with you. I mean, I don't understand what the right point would be for their rule. And it's because their claim is about the promulgation of the rule, which happened before they existed. Whereas an as-applied claim, as I understand your argument to be, would be that it's when the rule was applied to them. Then everybody has a clear date, and we understand that the clock starts at that point. But this is a different kind of claim. So I don't understand when the injury would occur in this situation. I think that's right. I think it would be really difficult to figure out exactly at what point, on their theory, they could actually bring suit. I'm having a little trouble understanding your answer, but probably I'm not understanding it correctly. Is it your argument that a facial challenge to a statute or a rule always accrues at the time of the adoption of the statute or rule, and that once the statute of limitations has passed, no one can bring a facial challenge to that statute or rule? So I think the statutory context is different, because there is no – All right. Forget the statute. Regulatory context. So in the regulatory context, yes. Our position is once the regulation has been adopted, there is a six-year period to challenge the final agency action adopting the regulation. And after that point, there's not an opportunity to bring a facial challenge. It can be challenged in the context of enforcement proceedings. All right. Let's say there was a regulation that said that only men can be admitted to one of the military academies. And after the statute of limitations has run, a woman applies, wants to be admitted to a military academy, and you would say it's too late for her to bring a facial challenge to that? We would say that if she applies to the military academy and is denied admission, that at that point there is an application of the regulation to her, and that she can raise substantive challenges to the regulation in that context. What's the difference between that and the situation of corner posts, other than the fact that they are indirectly heard rather than being directly heard? I mean, I think the difference is that in that case there is a subsequent final agency action that provides the focus and that is within the last six years, whereas on their theory there's no final agency action that they're pointing to. In Justice Jackson's questions, I would have thought it starts running the day they open the business. So, Justice Kavanaugh, I don't think... Just compare it to usual APA suits which start the day the rule is adopted and you're an ongoing business. So, I think that if they wanted to challenge suit before they opened the doors for business, what they'd say is, we have concrete plans to accept... Okay, so they, yeah, I take that point. I mean, I think, like, I'm not saying it's... Maybe a little bit before, maybe a little bit before, but you'd have to make a showing there, I think, to get in the door in that context, right? Well, I think more problematically, it's not they who would have to make that showing. I mean, ordinarily in an APA case, they would come forward and say, we have concrete plans to accept debit cards as of today and so we can bring the challenge. That's easy. The problem here is that we would have to come in and say, they formed concrete plans to accept debit cards sometime before they opened their doors, but how do we know when that was? Again, I'm not saying that's impossible. Yeah, I mean, that's pretty in the weeds debate, and I don't think that would arise that often, but maybe I'm wrong about that. Let me ask a question about the Article 3 standing point that was raised, just to make sure we're on the same page on that. My understanding is the day a rule is adopted and you're a regulated party, even if nothing's happened to you by the agency, you have standing to go into suit. That happens all the time, right? That's my understanding, too, yes. Okay. And if you're not a regulated party but you're an affected party, which is a big swath of ad law, you also, if you can show you're an affected party in some way, have standing to sue in injury on the day the rule is promulgated. I agree with that, too. Okay. How do your answers apply if it's a corporation that wasn't incorporated until seven years, you know, rather than six years? But you still say they have standing. Yes. We don't dispute that they have standing. We just think that their claim is untimely. I do, if I could, want to come to the final sentence. Can I just follow up on the chief's question? What if they were thinking about incorporating, but they haven't yet incorporated and they're still within the six-year period, and part of whether they incorporate and go into business depends on the structure of the industry and whether this rule is going to help. No standing, right? I think that's right. I mean, there's no case law I can point you to on this because no court in the country has applied their rule. I mean, I think adopting their rule would open the court up to all sorts of really thorny questions, however far down in the weeds they might be. I think those questions just haven't been explored. I mean, those questions come up in other contexts. Where is the business really operating? Is it a phony challenge to it? I mean, I've seen that before. So, I mean, maybe. Mr. Snyder, would this rule have effects? Justice Alito in his hypothetical started to ask you about a statute and then switched and was focused on rule. So, 2401 is the all-purpose statute of limitations. I'm just wondering, is your argument that we should interpret accrue this way because in the administrative law context and because of the Hobbs Act and all these specialized statutes, a statute of repose-style accrual makes more sense. Would there be spillover effects in say, you know, hey, I'm sure Congress would prefer all challenges to a statute to be adjudicated right away. Would there be spillover effects? I don't think there would be spillover effects. You're right that a primary part of our argument, the primary part of our argument is the Hobbs Act and the other special statutory review provisions establishing the standard rule in this context, and so it applies sort of here as well. We also have an argument about the final sentence of Section 702 that we haven't discussed. But the last reason that I don't think it would spill over to statutes is the challenges to statutes are necessarily, may I finish the sentence, are necessarily constitutional, and so the court has allowed claims against the validity of statutes outside of the context of a final agency action requirement as in the EPA. Thank you. Justice Thomas? Justice O'Neill? Just a couple of follow-up. You mentioned the permitting processes being one that would be unraveled by this new rule. Are there other areas that you haven't mentioned? I mean, I think similar areas like that, so land management plans, other things like that that are not regulations but are instead actions that the government has taken in carrying out all of the many functions that Congress has entrusted to it, land sales, land leases, things like that. I don't know exactly how the rule would apply in those circumstances, but I think it's at least plausible to think that it would apply to all of those. I don't know why it wouldn't on its logic. Again, I think that would be destabilizing. And number two, opposing counsel in answering Justice Barrett said that procedural challenges would not happen, but in your brief you suggested they would. Could you tell me why their concession is not convincing to you? Well, I mean, we said it in our brief before they had made that concession. They hadn't said that until the reply brief. And their complaint includes procedural challenges. If you look at paragraphs 93 and 95 of their complaint, they include arguments that the agency failed to provide a reasoned explanation of Regulation I.I. and that the record before the agency wasn't sufficient to support it. So I'm glad that they're willing to give up procedural challenges, but we hadn't anticipated that before. Mrs. Kagan? Mr. Snyder, I want to emphasize that I'm asking you a hypothetical question. It's an if question. There is obviously another big challenge to the way courts review agency action before this court. Has the Justice Department and the agencies considered whether there is any interaction between these two challenges? And, again, you know, if Chevron were reinforced or affirmed, if Chevron were reversed, how does that affect what you're talking about here? So I want to be careful here. I mean, we, of course, have thought about it. I think what I'd say is that a decision for petitioner here would magnify the effect of any other decisions changing the way that this court or other courts have approached administrative law questions because it would potentially mean that those changes would then be applied retroactively to every regulation that an agency has adopted in the last, I don't know, 75 years or something. Justice Gorsuch? Justice Kavanaugh? One follow-up question on something you said earlier. This is also about future effects on standing. They ask in this suit to set aside the rule. Your position, the Solicitor General's position, is that that can't be done under the APA. If you can't set aside the rule and you're not a regulated party, how is their injury redressable in this suit and why do they have standing? So I think our position has been that courts are only able to provide relief to the party before them, and that ordinarily they How would that be done in a circumstance like this? So I think, and I'm a little hesitant to say this, but I think that in this circumstance it's possible that the only way to provide this party relief would be vacater. I'm not certain that that's right, but I think that's possible. I think that's probably right, which is why I was surprised when you said what you said, that if you don't have the set-aside remedy, they probably don't have standing here. So I think the reason is that the power that the court has under the APA is to provide relief to the party before it, not more broadly. And it's possible that in circumstances where the only way to give the party before the court relief is vacater, that that would be consistent with traditional equitable considerations in a way that providing vacater in other cases is not. Well, that's a new twist. I don't intend that to be a new twist. So to the extent that I... Okay, I'll review the transcript, thank you. Justice Barrett? Justice Jackson? So just one question. The Chief mentioned the sort of common intuition that everybody gets their day in court. And I understand that and agree in a general sense. But there's also the intuition that the court sometimes talks about the importance of finality. And it seems to me that in this particular scenario, finality principles should be playing a significant role. So can you just speak to, this has come up a couple of times, but why a new company that has been born into a particular regulatory environment, why should they be entitled to appear on the scene and potentially unsettle all of the long-established rules and expectations that govern all of the other companies that exist in that space? So, of course, we don't think they should. And I think, I mean, any statute of limitations is always balancing the interest in judicial review on the one hand and the interest in repose on the other. And I think in the context of administrative law challenges to agency action, both of those considerations sort of point in the direction of accrual at the time of agency action, because the new entrant to the market knows what it's getting into. So its interest in having its day in court is less than it might be in some other context. And on the other hand, because there are so many new entrants every day in a market, if you don't cut off the limitations period at that point, then the time for bringing challenges would extend to decades. And this court has consistently rejected readings of limitations provisions that would allow suits to be brought decades after the thing that's being challenged occurred. Thank you. Thank you, counsel. Rebuttal, Mr. Weir? Thank you. Just a few points. At the outset, the challenges that my friend discussed are not procedural. Those are State Farm substantive challenges that we have in our complaint. Those are available in as-applied context. We think they will be available if the court sides with us. On the question of when an APA claim first accrues, we think the statute tells you. It says in the past tense, or you're already being affected, you're already harmed. We think that when you first are harmed by the regulation is when it starts. But even if it starts at imminence, we don't think it really matters that much. This court dealt with when an injury is imminent in Lujan. It's an objective test. You have to do more than just say, I want to go somewhere. And so we would say you can look at Lujan. But in any event, the difference between when an injury is imminent and when it's actual is typically very small. And six years into the future, it's really not going to matter when the statute of limitations runs. We think it's a rare case where that's going to actually matter. As far as the concern about the APA being the only accrual-based statute in the regulatory context, we think that makes sense. The APA is the background rule. You would only pass an agency-specific rule to deviate from that background, so there would be no real reason to pass an agency-specific rule. And, again, Congress knows exactly how to pass a repose-based statute. It did it before the APA. It did it after the APA. We think that's an intentional choice, and it's done it many times since. And the idea that because Congress has done it that way for some regulations, that we should apply that rule to 2401A, I think, upsets basic interpretive principles. When Congress makes different choices, it expects different rules. Finally, I think the government is asking, really, for a special exception that would upset a lot of this Court's precedent. You would have to either undermine the reasoning or flatly overrule the Court's precedents applying accrual-based statute of limitations, including this Court's decision in Gabelli, where it interpreted this exact same language as meaning what we say it means, and also undermine this Court's holding in Franconia, where the government asked for special rules under, again, the exact same language in the Big Tucker Act, under first accrues, and this Court said that it should apply the exact same as it does to private parties. And to the extent there is some problem here, this Court said in Ratkiski just five years ago, it is Congress's job to change the text of the statute, not this Court's. Thank you. Thank you, Counsel. The case is submitted.